```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

| | |
|---|---|
| DAVID DUWAYNE MCMILLION, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>    Defendant. ) | CAUSE NO.: 2:16-CV-77-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff David Duwayne McMillion on February 29, 2016, and Plaintiff's Memorandum in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [DE 16], filed by Plaintiff on August 22, 2016. Plaintiff requests that the August 25, 2014 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On October 3, 2016, the Commissioner filed a response, and Plaintiff filed a reply on October 24, 2016. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits and supplemental security income on November 5, 2012, alleging disability since December 13, 2011. The claims were denied initially and on reconsideration. On June 19, 2013, Plaintiff filed a written request for hearing. On May 27, 2014, Administrative Law Judge Joel Fina ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, an impartial vocational expert, medical expert Dr. David

Biscardi, and medical expert Dr. Ashok Jilhewar. On August 25, 2014, the ALJ issued a written decision denying benefits, making the following findings:

> The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> The claimant has not engaged in substantial gainful activity since December 13, 2011, the alleged onset date.
>
> The claimant has the following severe impairment: Class III obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, hepatitis C infection and a history of alcohol abuse.
>
> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant is limited to frequent climbing (ladders, ropes, scaffolds, ramps and stairs), balancing, stooping, crouching, kneeling and crawling.
>
> The claimant is unable to perform any past relevant work.
>
> The claimant was born [in 1962] and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> The claimant has a limited education and is able to communicate in English.
>
> Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> The claimant has not been under a disability, as defined in the Social Security Act, from December 13, 2011, through the date of this decision.

(AR 14-24).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and

the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be

based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**BACKGROUND**

**A. Medical Evidence**

There is no relevant medical evidence of record from December 13, 2011, which is Plaintiff's alleged onset date of disability, until December 14, 2012, which is when Plaintiff sought treatment for lower back, right hip, and right knee pain from nurse practitioner Quinn West, ANP. (AR 425). Plaintiff reported to Mr. West that he had not had any medical care since 2010, and he had stopped taking his medications due to cost. (AR 425). On examination, Mr. West found Plaintiff had decreased motion of the right hip and knee and the lumbar spine and had pain with palpitation in the lower back; however, there was no evidence of swelling, edema, or deformity. (AR 426). Mr. West also reported no neurological deficit, and he noted that Plaintiff denied any depression. (AR 425-427). Mr. West's impressions were back pain, hypertension, right hip and knee pain, and osteoarthritis, and he referred Plaintiff for x-rays. (AR 427). Mr. West also prescribed pain and hypertension medication. (AR 427).

On December 18, 2012, x-rays were taken at Methodist Hospital. The x-ray of the lower back showed degenerative spurring with facet joint arthropathy. There was no fracture or dislocation and no defects noted on the oblique views. The disc spaces were well-maintained. The impression was osteoarthritis. (AR 303). The x-ray of the right knee showed no fracture or subluxation. The visualized bony structures presented "normal architecture" and no soft tissue abnormality was seen.

The impression was an unremarkable right knee. (AR 394). The x-ray of the right hip was normal. (AR 395).

Plaintiff returned to see Mr. West on January 4, 2013, and Mr. West noted that Plaintiff had "not been to the doctor in many years for treatment." (AR 422). Mr. West's reported examination findings and diagnoses were unchanged. (AR 422-423).

On January 14, 2013, J. Smejkal, M.D., conducted an examination of Plaintiff, who complained of neck, lower back, right knee, and right hip pain as well as migraine headaches, high blood pressure, and depression. (AR 404). Dr. Smejkal noted that depression had not been diagnosed. Dr. Smejkal wrote that Plaintiff "walks with a cane that was not prescribed and is not medically necessary" but Plaintiff "claims it takes the pressure off his right hip and knee." (AR 404). Dr. Smejkal noted that Plaintiff experienced headaches only when his blood pressure was high.

On examination, Dr. Smejkal found that Plaintiff had normal curvature of the spine with no deformity. Plaintiff had lumbar tenderness with restricted range of motion, but full range of motion of the thoracic and cervical region. Straight leg raising was negative. Dr. Smejkal noted no abnormality of Plaintiff's upper or lower extremities. Plaintiff had a normal gait using his cane. But, he did the heel to toe walk and got on/off the examination table with difficulty and could stand from a sitting position with difficulty. Plaintiff was unable to stoop and squat. Dr. Smejkal again noted that Plaintiff uses a cane "that was not prescribed and does not seem medically necessary." (AR 407). Plaintiff demonstrated no neurological deficit. (AR 407). Dr. Smejkal's impressions were history of right hip and right knee pain, history of arthritis of the lower back and possibly the neck since 2012, high blood pressure, history of migraine headaches, and history of depression with no diagnosis. (AR 407).

On January 18, February 1, February 15, March 15, and April 19, 2013, Plaintiff was treated by Melvin Richardson, M.D., and nurse practitioner Nicole Richards for back and hip pain. (AR 523-26). Plaintiff was referred for an MRI of his back. (AR 526). At the April 19, 2013 visit, Ms. Richards noted that, on musculoskeletal physical examination, Plaintiff showed decreased range of motion of the lumbar spine with bony tenderness, pain, and spasm. (AR 524).

The MRI, taken on May 10, 2013, showed degenerative disc disease at L5-S1 level with broad-based bulging disc. Broad-based bulging discs were also noted at L3-4 and L4-5, and L5-S1 levels with facet joint arthropathy in the lower lumbar spine with central anal stenosis. There was no spinal stenosis or intraspinal abnormality. (AR 572).

On June 14, 2013, Ms. Richards prescribed a four-prong walking cane. She saw Plaintiff again on June 21, 2013, to give him his lab results. Plaintiff reported continued pain but otherwise was feeling well. Plaintiff saw Ms. Richards for routine care on July 29, 2013, to receive test results on September 18, 2013, and to receive test results on October 15, 2013. On February 3, 2014, Plaintiff saw Ms. Richards, reporting constant back, right leg, and bilateral hip pain and stating that his back pain was worse and that he had not been able to sleep. On March 7, 2014, Plaintiff saw Dr. Melvin Richardson for labs and reported knee pain. On April 4, 2014, Plaintiff saw Dr. Richardson regarding labs and reported back pain with leg cramps and pain radiating down his back. Although he found no abnormality, Dr. Richardson noted pain to tenderness at the midline lumbar spine. On May 5, 2014, Plaintiff saw Ms. Richards for shortness of breath and indigestion and was given a referral to gastroenterology. On May 19, 2014, Plaintiff saw Ms. Richards for a lab review and offered no other concerns. (AR 619). On exam, Ms. Richards noted that Plaintiff was ambulating

with a single cane steadily with an abnormal gait, that he exhibited decreased range of motion in the lumbar back, and that he had bony tenderness in the lumbar back.

## B. Hearing Testimony

At the administrative hearing on March 27, 2014, Plaintiff testified that he stopped working primarily due to severe back pain. (AR 32, 34). Plaintiff also complained of hip and knee pain. (AR 37). Plaintiff testified that as a result of his impairments he could stand for only one-half hour at a time, and sit for one-half hour at a time. (AR 36). Plaintiff further testified that his activities were limited to watching television, going shopping for groceries every once in a while, and going out occasionally with a friend. (AR 35-36).

Plaintiff testified that he took medication for hypertension, ammonia in his blood, and sometimes for pain. (AR 37). He did not take medication for depression or anxiety. (AR 38). Plaintiff reported that he had used a cane since 2013 because his back hurt "twice as bad, without it." (AR 38). He testified that he has fallen when he does not use the cane because sometimes his right knee gives out for no reason.

The ALJ called upon two medical experts to testify at the hearing. David Bacardi, Ph.D., testified that the evidence of record failed to demonstrate a severe mental impairment. Ashok Jilhewar, M.D., an internist, testified that at Plaintiff's height and weight he would be classified as either Class II moderately obese or Class III morbidly obese, and that an MRI showed him to have multi-level disc bulging, but with no neurological deficit. Dr. Jilhewar also testified that Plaintiff used a cane that was not medically prescribed. Dr. Jilhewar further noted that Plaintiff was diagnosed with Hepatitis C. Dr. Jilhewar acknowledged Dr. Smejkal's clinical examination, noting that the only abnormal finding was the limited range of motion in the lumbar spine. Dr. Jilhewar

9

noted that Plaintiff's gate was normal and there was no motor deficit. Dr. Jilhewar noted that Plaintiff was using a nonprescribed cane and that there were no clinical findings of loss of balance either by Dr. Smejkal or elsewhere in the record. Dr. Jilhewar reviewed the x-rays and the MRI.

In terms of functional limitations, Dr. Jilhewar testified that Plaintiff was limited to light exertional work with the ability to perform frequent postural activities and that he did not require an assistive device to ambulate. (AR 53-54). Dr. Jilhewar opined that Plaintiff could frequently do ladders, ropes, and scaffolds and balance, stoop, kneel, crouch, and crawl. He testified that his opinion is based on the medical records.

The vocational expert identified jobs existing in significant numbers in the regional and national economies that an individual with Plaintiff's residual functional capacity could perform. (AR 59-61).

## ANALYSIS

Plaintiff seeks remand, arguing that the ALJ erred in his assessment of Plaintiff's Residual Functional Capacity by improperly assessing Plaintiff's inability to bend and stoop, his use of a cane, and his depression. Plaintiff also argues that the ALJ erred in the hypothetical questions posed to the vocational expert. The Court considers each argument in turn.

### A. Residual Functional Capacity

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a); 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The

RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

*1.     Postural Limitations - Bending and Stooping*

The ALJ found Plaintiff capable of light exertion work with a limit to frequent climbing (ladders, ropes, scaffolds, ramps, and stairs), balancing, stooping, crouching, kneeling, and crawling. Light work requires lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, standing and walking for approximately six hours of an eight-hour work day, stooping occasionally, and using arms and hands to grasp, hold, and turn objects while standing. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *5-6 (1983).

11

Plaintiff argues that the uncontradicted evidence of record is that he is unable to bend and stoop. Stooping is defined as bending the body downward and forward by bending the spine at the waist. SSR 85-15, 1985 WL 56857, at *7 (1985). If a person can stoop occasionally in order to lift objects, the sedentary and light occupational base is "virtually intact." *Id*. On January 14, 2013, Dr. Smejkal, the state agency examining physician, found that Plaintiff was unable to stoop and squat. (AR 407). Dr. Smejkal further measured plaintiff's range of motion in the lumbar spine to be: 30° forward flexion (90° is normal); 0° extension (25° is normal); 0° lateral flexion on both right and left (25° is normal). (AR 408). And, Plaintiff's treatment records are consistent with this consultative examiner finding. His treating nurse practitioners, Nicole Richards and Quinn West, repeatedly noted a finding of limited range of motion in his lumbar spine. *See* (AR 423 (1/4/2013), 426 (12/14/2012), 524 (4/19/2013), 595 (5/19/2014), 603 (2/3/2014)).

Ms. Richards also opined that plaintiff cannot stoop or bend. (AR 591-92) (Physical Medical Source Statement). However, the ALJ discounted her opinion as a nurse practitioner, which is not recognized as an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), 404. 913(a). And, Plaintiff does not argue that the ALJ erred in weighing Ms. Richards' opinion.

Nevertheless, the weight given to the opinion evidence is separate from the content of the nurse practitioners' treatment records, which are consistent with Dr. Smejkal's examination findings, and which may be used to show the severity of an impairment and how it affects a claimant's ability to work. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). The ALJ does not discuss Ms. Richards' findings regarding Plaintiff's limited range of motion in the lumbar spine and offers no explanation for ignoring the findings in the treatment records.

At the hearing, the ALJ asked Dr. Jilhewar, the non-examining medical expert, whether he agreed with Ms. Richards' medical source statement; Dr. Jilhewar responded that he disagreed with Ms. Richards' opinion because the record failed to demonstrate abnormal clinical findings or intensity of management of any impairment that would support such an assessment. Yet, there is no discussion by Dr. Jilhewar of Ms. Richards' clinical findings regarding Plaintiff's limited range of motion in the lumbar spine.

Also, Plaintiff's hearing testimony is consistent in that he testified that he wears shoes without laces to avoid having to tie them because he cannot bend over. (AR 42).

Notwithstanding Ms. Richards' clinical findings and Dr. Smejkal's examination findings, the ALJ found Plaintiff could "frequently stoop and crouch." (AR 18). The two non-examining state agency physician—Drs. J.V. Corcoran and J. Sands—opined that plaintiff has no postural or manipulative limitations. (AR 82, 94-95). And, Dr. Jilhewar, who testified at the hearing but did not examine Plaintiff, opined that Plaintiff can stoop and crouch frequently. (AR 54). However, all three non-examining consultative physicians appear to have ignored, without explanation, the findings of Dr. Smejkal and the treatment records of Ms. Richards. Although Dr. Jilhewar testified that his assessment was based on the medical records, he does not explain why he discounted Dr. Smejkal's examination finding regarding stooping and bending.

In the response brief, the Commissioner attempts to justify this omission by essentially weighing the meaning of Dr. Smejkal's findings—something that neither the ALJ nor Dr. Jilhewar did. The Commissioner notes that, even thought Dr. Smejkal reported that Plaintiff was unable to stoop and squat and had restricted range of motion of the lumbar spine, Dr. Smejkal also reported that Plaintiff demonstrated negative straight leg raises, normal spine curvature with no anatomic

13

deformity, and no neurological deficit. (Def. Resp., ECF 17, p. 9). The Commissioner then notes that Dr. Jilhewar found the lack of neurological deficit, lack of motor deficit, and lack of joint abnormality significant in reaching his conclusions. However, the ALJ did not tie together Dr. Smejkal's examination findings and Dr. Jilhewar's conclusion, nor did Dr. Jilhewar explain away Dr. Smejkal's examination findings that Plaintiff cannot stoop or squat on this basis. Thus, the Commissioner's logic cannot be the basis for finding the ALJ's RFC supported by substantial evidence.

Finally, the ALJ recited Dr. Smejkal's findings that Plaintiff is unable to stoop and squat. (AR 20). Yet, the ALJ did not assess how this finding would affect plaintiff's RFC for light work with frequent stooping, crouching, and crawling. The ALJ relied on the non-examining sources who did not cite this favorable evidence. Under these circumstances, the ALJ's failure to consider the postural limitations found by the examining consultative physician and supported by the treating nurse practitioner's treatment records is error and requires remand. *See Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) ("An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion."); *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (directing ALJ on remand to fix error of failing to address medical findings of limited lower back flexion and inability to squat in finding claimant could occasionally stoop, kneel, crouch, and crawl); *Golembiewski,* 322 F.3d at 917 (holding that ALJ's failure to address a medical report that claimant had limited flexion in lower back was reversible error in finding that claimant could occasionally stoop); *Marsee v. Colvin*, No. 2:13-CV-392, 2015 WL 5474554, at *5 (N.D. Ind. Sept. 16, 2015); *Brown v. Colvin,* No. 2:14-CV-23, 2015 WL 438723, at *4 (N.D. Ind. Feb. 3, 2015) (reversing and remanding where ALJ's finding of ability to stoop

occasionally not supported by the record, which included evidence of limited flexion and a medical finding that claimant was unable to stoop); *see also Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) ("[The ALJ] must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position."). In other words, the ALJ did not build a logical bridge from the evidence to his conclusion. *See Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

Whether Plaintiff is able to stoop is a critical issue in this case as all three jobs identified by the vocational expert and relied on by the ALJ involve "occasional bending" and an inability to stoop would preclude their performance as well as all sedentary jobs. (AR 62-63); *see* SSR 85-15; SSR 83-14, 1983 WL 31254 (1983). If the ALJ had found that Plaintiff did not have an RFC for light work, Plaintiff would have been limited to sedentary work. Under the Medical-Vocational Guidelines, a limitation to sedentary work would have made Plaintiff disabled on his fiftieth birthday. *See* 20 C.F.R. Pt. 404, Subt. P., App. 2, Table No. 1, Rule 201.10.

Accordingly, the Court reverses and remands for further consideration of Plaintiff's ability to stoop and squat in formulating the RFC.

2.  *Use of a Cane*

Plaintiff testified that he used a cane since 2013 for stability and to reduce back pain. (AR 38). He also testified that he falls when his right knee "will just give out" and he would be "scared" to walk without a cane. (AR 38-39). When plaintiff was examined by Dr. Smejkal on January 14, 2013, Dr. Smejkal noted that plaintiff walks with a cane that was not prescribed and that its use did not seem medically necessary. (AR 404, 407). However, Dr. Smejkal also noted that plaintiff has normal gait using a cane but had difficulty walking heel to toe and tandemly and experiences

15

difficulty getting on and off the examination table and moving from sitting to standing. (AR 407). On June 14, 2013, Ms. Richards, Plaintiff's treating nurse practitioner, prescribed a four-prong walking cane for plaintiff due to imbalance and unsteady gait. (AR 580, 596 ,617).

In his decision finding that Plaintiff can perform light work with frequent postural limitations, the ALJ discounted Plaintiff's use of a cane as "self-prescribed" despite earlier in his decision recognizing that Ms. Richards prescribed a cane. The ALJ also relied on Dr. Jilhewar's finding that the cane was not medically necessary. However, neither the ALJ nor Dr. Jilhewar discussed the prescription for a cane given by Ms. Richards. At the time Dr. Smejkal examined Plaintiff in January 2013, Ms. Richards had not yet prescribed the cane. Notably, Dr. Smejkal found Plaintiff to have a normal gait using a cane but did not report on Plaintiff's gait without a cane. (AR 407).

If Plaintiff needs to use a cane, he may be precluded from performing light work. *See Thomas*, 534 F. App'x at 549-50. On remand, the ALJ will have an opportunity to more thoroughly assess Plaintiff's need for a cane for standing and walking and the impact of any such need on his ability to work.

3. *Depression*

At step two, the ALJ found Plaintiff's depression to be nonsevere but also found that Plaintiff has mild difficulties in maintaining concentration, persistence, or pace. (AR 16). However, in determining the RFC, the ALJ did not discuss this mental limitation and did not include any mental limitation in the RFC. Nonsevere impairments must be considered in assessing the RFC. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). On remand, the Court directs the ALJ to discuss the finding of a mild difficulty in concentration,

persistence, and pace resulting from Plaintiff's nonsevere depression in the context of formulating the RFC.

## B. Step Five - Hypothetical Questions to Vocational Expert

The ALJ relied on the vocational expert's answers to hypothetical questions to find that Plaintiff could perform jobs in the economy and, thus, to deny benefits. Plaintiff argues that this reliance was in error because the hypothetical questions did not include all of the limitations that should have been included in the RFC, including limitations on the ability to bend, crouch, squat, stoop, and carry/lift objects, the need for a cane, and the mild limitations related to plaintiff's depression. Plaintiff is correct that the questions posed to the vocational expert must incorporate all relevant limitations of the claimant if the ALJ is to rely on that testimony. *See Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002). Because the Court is remanding for a proper analysis of the record in formulating the RFC, the ALJ will have an opportunity to pose hypothetical questions to the vocational expert, if necessary, that are based on that RFC.

Plaintiff also argues that the Commissioner has not met her burden at step five because the vocational expert did not explain the source and accuracy of his data concerning the number of available jobs. The Commissioner responds that, because Plaintiff did not question the basis of the vocational expert's opinion at the hearing, the ALJ was not required to make further inquiry. Plaintiff does not pursue this argument in his reply brief. The Court finds that the ALJ did not err in this regard. *See McKinnie v. Barnhart*, 368 F.3d 907, 910-11 (7th Cir. 2003).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Memorandum in Support of his Motion to Reverse the Decision of the Commissioner of Social

Security [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 8th day of February, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT